**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| RONNIE DANIELS,<br><br>    Daniels,<br>v.<br><br>BARRY REDDISH, MARK TAYLOR, HERBERT McCLOUD, CASEY CLARK, WILLIAM BENNETT, JAY GROVES, DOUGLAS EUNICE, and NURSE JANE DOE, individually,<br><br>    Defendants. | Case No. 3:15-cv-719-J-34MCR |

**COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS THE AMENDED COMPLAINT**

COMES NOW the Plaintiff, RONNIE DANIELS, and responds to Defendants' Motions to Dismiss the Amended Complaint (Docs. 20 and 21), and would show:

1. Plaintiff Daniels is a Kentucky prisoner placed in Florida under the Interstate Compact to serve a Kentucky sentence. He was badly beaten by Florida prison officers in reprisal after an officer trainee slipped and broke his leg while running Daniels' head into a wall.

2. Defendants Taylor, McCloud, Clark, Bennett, Groves and Eunice have moved under Fed.R.Civ.P. 12(b)(6) to dismiss Plaintiff's Amended Complaint. Defendant Reddish, through separate counsel, also moves for dismissal.

3. One of the bases for dismissal was resolved by the Court with the Order Enlarging Time for Service of the Complaint to October 21, 2015. Doc. 22.

4. The gist of the remaining Motions seems to be that Plaintiff failed to exhaust his administrative remedies because his grievance was untimely and insufficient.

5. Daniels agrees he is required to exhaust the grievance requirement of 42 U.S.C. §1997e(a) as a condition of filing the instant lawsuit and has done so. Daniels has definitively pled compliance with the statute in his Amended Complaint.

1

**MEMORANDUM OF LAW**

A court must accept a plaintiff's well-pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995). After *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), there is no longer a "heightened pleading standard" in the Eleventh Circuit as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

In the Eleventh Circuit, a failure to exhaust administrative remedies has been treated as a "matter in abatement" that should be raised, if possible, on a Rule 12 motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368 (2008). *But see Jones v. Bock*, 549 U.S. 199, 220-21, 224, 127 S.Ct. 910 (2007). (Issue of exhaustion of remedies does not change the rules of litigation). Under Eleventh Circuit law, a court may make findings of fact relating to exhaustion prior to the summary judgment stage. *Bryant* involved two inmates, one of whom failed to file a grievance and the other of whom abandoned the grievance process before completion. *Bryant* did not implicate the facts of the instant case where Daniels filed a grievance late but it was nevertheless accepted for consideration by the Reviewing Authority (i.e., not returned without processing) and denied on the basis that, although the matter complained of was considered appropriate for investigation, the investigation had been initiated before the grievance was filed. Daniels was advised to follow up with the Inspector General's Office which was then investigating the incident.

To the extent defects exist in the Amended Complaint, it is possible to cure such defects through further amendment. Rule 15(a), Federal Rules of Civil Procedure, states that leave to amend "shall be freely given when justice so requires." The Eleventh Circuit has held motions for leave to amend complaints should be liberally granted when necessary in the interests of

justice. *See Hennings v. BIC Corp.*, 181 F.3d 1250, 1258 (11th Cir.1999); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir.1996) ("Unless substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial."), *citing Shipner v. Eastern Airlines, Inc.*, 868 F.2d 401, 407 (11th Cir.1989).

### A. Defendants' Allegation that Grievance Was Untimely

Defendants produce as their Exhibit A what purports to be a grievance by Daniels filed directly with the Office of the Secretary of Corrections on April 30, 2012. The grievance states that it is a grievance of a sensitive nature and the subject is staff abuse. The Florida Administrative Code (FAC) 33-103.007(6) permits emergency grievances or grievances of reprisal (known in FDOC as "grievances of a sensitive nature"), among others to be filed directly with the Secretary of Corrections ("direct grievance").

The Bureau of Policy Management and Inmate Appeals is authorized by the Secretary to receive, review, investigate, evaluate, and respond to direct grievances. The Bureau is located in the Office of the General Counsel and is managed by the Chief of Policy Management and Inmate Appeals. FAC 33-103.002(2). Direct grievances are responded to by the Bureau Chief, or designated staff who serve as the Secretary's representative ("Reviewing Authority"). FAC 33-103.002(15)(d)2. As a response, the Reviewing Authority may "approve, deny, or return the grievance and the reasons for approval, denial, or return. FAC 33-103.002(16)

A grievance that is not granted or denied on the merits is returned to the filer without action. "A grievance may be returned to the inmate for any one or more of the reasons stated in Rule 33-103.014, F.A.C., without further processing." FAC 33-103.007(4). Among the reasons a grievance may be returned without processing is FAC 33-103.014(f), that there was no valid reason for by-passing the previous levels of review. Another reason to return a grievance without

3

action is that it was not received within 15 days of the date that the incident being grieved occurred. FAC 33-103.014(h). To be considered, a grievance filed outside the specified time limits must satisfy the Reviewing Authority that it was not feasible to file within the relevant time periods despite a good faith effort. FAC 33-103.007(6)(a)2. The Reviewing Authority has an undefined discretion to reject the grievance or to accept it and treat it as timely filed.[1]

Daniels noted in the grievance that he had been beaten and nearly killed by Florida corrections officers and that his family had been told by a hospital social worker that Daniels was not expected to live. Daniels explained that he was hospitalized for four weeks and that he had concerns for retaliation by corrections officers. Threats of reprisal can render a grievance process unavailable. *Stanley v. Rich*, 2006 WL 1549114, *2 (S.D. Ga.).

As noted in the grievance response in Defendants' Exhibit A, the Reviewing Authority did not return the grievance pursuant to FAC 33-103.014, but rather chose to "deny" the grievance and gave as a reason the fact that the review by the investigative section of the Office of the Inspector General "was initiated prior to the receipt of your grievance." However the specific demand of Daniels – that he be returned to Kentucky under the Interstate Compact was ultimately granted. He was returned to Kentucky and Plaintiff can so plead.

In any case, the Reviewing Authority chose to treat the late grievance as timely filed and did not return the grievance but rather forwarded it to the Office of the Inspector General, formally denying relief for the stated reason that an investigation into the matter had already been started prior to the filing of the grievance. Transfer back to Kentucky, the specific relief

---

[1] Here, Defendants appear to cite the Eleventh Circuit's *Johnson v. Meadows*, 418 F.3d 1152 (2005) (dealing with Georgia grievance rules) and the U.S. Supreme Court's *Woodford v. Ngo*, 548 U.S. 91, 126 S.Ct. 2378 (2006) (dealing with California grievance rules) to the effect that there can be no valid excuse for failure to timely-file a grievance. The cases merely hold that the. grievance rules must be followed. In those cases, and in *Harper v. Jenkin*, 179 F.3d 1311 (11th Cir. 1999), the grievances were rejected as untimely. In the case at bar, the Reviewing Authority exercised its discretion to accept and process Plaintiff's grievance instead of returning it without action.

4

requested, was ultimately granted. *Bolton v. U.S.*, 347 F.Supp.2d 1218, 1221 (N.D. Fla. 2004 (Grievance process exhausted when requested relief was granted).

There have been many cases noting that prison officials cannot rely on a prisoner's defects in compliance with the rules if they responded to the grievance rather than throwing it out based on that noncompliance. See *Lee v. Smith*, 2010 WL 114876, *3 (S.D.Ga., Jan. 12, 2010) (declining to dismiss where plaintiff's grievance was decided on the merits at the first level and no procedural defects on appeal authorized rejection); *Subil v. U.S. Marshal*, 2008 WL 835712, *5 (N.D.Ind., Mar. 24, 2008) (declining to dismiss for non-exhaustion where grievance was not filed in the normal channels, but the final reviewing authority accepted and responded to it); *Thompson v. Correctional Medical Services, Inc.*, 2008 WL 704229, *2 (E.D.Mich., Mar. 14, 2008) (Where medical grievance was accepted and addressed on its merits and not rejected as untimely, grievance process could not be deemed unexhausted); *Baker v. Vanderark*, 2007 WL 3244075, *7-8 (W.D.Mich., Nov. 1, 2007) (citing the *Woodford v. Ngo,* 548 U.S. 91, 126 S.Ct. 2378 (2006) concept of "proper exhaustion" as requiring officials to raise procedural defects timely); *Riley v. Hawaii Dep't of Public Safety*, 2007 WL 3072777, *4-6 (D.Haw., Oct. 17, 2007) (holding prisoners complaining of sexual assault who completed the emergency grievance procedure as instructed, and whose complaints were processed through it, had exhausted despite not also completing the standard grievance process); *Kretchmar v. Beard*, 2006 WL 2038687, *5 (E.D.Pa., July 18, 2006) ("When the merits of a prisoner's claim have been fully examined and ruled upon by the ultimate administrative authority, prison officials can no longer assert the defense of failure to exhaust, even if the inmate did not follow proper administrative procedure."); *Jones v. Stewart*, 45 7 F. Supp. 2d 1131, 1134-3 7 (D. Nev., 2006 (arguing that *Woodford* sets out a "merits test" – did the agency address the merits up to the highest level? and

5

a "compliance test" – did the plaintiff follow the rules? and proper exhaustion is satisfied by compliance with either); *Accord, Cohen v. Baca*, 2007 WL 1575245, *5 (D.Nev., May 30, 2007).

### B. Allegation that Grievance Allegation that Grievance Was Improper

Defendants Mark Taylor, Herbert McCloud, Casey Clark, William Bennett, Jay Groves, and Douglas Eunice complain that Daniels "filed to identify in his grievance the specific acts of wrongdoing by FDOC employees that form the basis of his section 1983 claims now asserted (1) as to Defendant Taylor in Count I of his Amended Complaint, and (2) as to Counts II and III of his Amended Complaint, *in toto*." Doc. 20, p. 11.

In the description of events given in the direct grievance, Daniels stated that he had a confrontation with a corrections officer trainee (Taylor) which had resulted in retaliation by the Administrative Lieutenant (subsequently found to be Clark) who levered Daniels' cuffed hands up so that he was bent forward and kneed him in the rib cage. Then the other Lieutenant (whose name is still unknown) and the three Sergeants (McCloud, Bennett, and one unknown), began to hit him and the Administrative Lieutenant (Clark) kneed him ten times in the next 80 yards that he was marched, while the four Corrections Officers (Groves, Eunice, and two unknown) hit him countless times. He described that he was taken to Shands Hospital, that he had several broken ribs, that his lungs were collapsed, and that he almost died from the beating.[2]

In their Motion to Dismiss, Doc. 20, p. 11, Defendants quote *Brown v. Sikes* to say that an inmate must "provide as much relevant information as he reasonably can in the administrative grievance process." as if that phrase ended the sentence when in fact the sentence continued, ". . . it does not require that he do more than that." 212 F.3d 1205, 1207 (11th Cir. 2000). *Brown v. Sikes* continues, "But a prisoner cannot provide that which he does not have; he cannot identify

---

[2] Some details were not part of the direct grievance but by then the other inmate witness reports had led to an investigation by the Inspector General's Office had the broader details. Plaintiff can plead that medical records showed that Plaintiff suffered pneumothorax and had to have a surgical opening in his throat to access oxygen.

6

those whose identities are unknown to him. Pegging our thinking to the words of the statute, a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain is not a remedy that is "available" to the prisoner." *Id*. At 1208.

Cases from other jurisdictions agree: A grievance "need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."); *Kikumura v. Osagie*, 461 F. 3d 1269, 1283 (10th Cir. 2006); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004); *Milan v.* Chen, 2008 WL 2229215, *5 (C.D.Cal., Feb. 5, 2008), report and recommendation adopted, 2008 WL 2116930 (C.D. Cal., May 14, 2008) and 2008 WL 2116959 (C.D.Cal., May 14, 2008); *see Wine v. Pollard*, 2008 WL 4379236, *3 (W.D.Wis., Sept. 23, 2008) (requiring prisoners to identify every possible legal theory in a grievance "would be unfair and possibly invalid"); *Jones 'El v. Berge*, 172 F. Supp. 2d 1128, 1134 (W.D.Wis. 2001) (holding that once a claim is exhausted, "[a]ny claim for relief that is within the scope of the pleadings" may be litigated without further exhaustion).

It is important to keep in mind that if the Reviewing Authority of the Florida Department of Corrections had rejected Daniels grievance and returned it without action under FAC 33-103.114, Daniels could have pursued other options. The U.S. Supreme Court in *Woodford v. Ngo*, 548 U.S. 91, 126 S.Ct. 2378 (2006), did not rule on the possibility that prisons might "create procedural requirements for the purpose of tripping up all but the most skillful prisoners," since the case did not present that situation, the Court clearly recognized that potential. *Id*. at 102. This is a concern that has been expressed by numerous courts. *See, e.g., Hooks v. Rich*, 2006 WL 565909, *5 (S.D. Ga., Mar. 7, 2006) ("The exhaustion requirement is a gatekeeper, not a 'gotcha' meant to trap unsophisticated prisoners who must navigate the

administrative process pro se."); *LaFauci v. N.H. Dep't of Corr.,* 2005 WL 419691, *14 (D.N.H., Feb. 23, 2005) ("While proper compliance with the grievance system makes sound administrative sense, the procedures themselves, and the directions given to inmates seeking to follow those procedures, should not be traps designed to hamstring legitimate grievances.").

Daniels did not elaborate his medical complaint in the direct grievance because a grievance of a medical nature must be filed at the institutional level. FAC 33-103.008(1). The complication for Daniels was that the medical grievance for denial of and interference with treatment was also a grievance of a sensitive nature. The complaint was that the Administrative Lieutenant (Clark), his primary abuser, had told the nurse to send out his officer with the broken leg (Taylor) in the first ambulance, waiting for the second ambulance to transport the critically-injured Daniels. Daniels reasonably anticipated a threatened reprisal for filing that grievance at the institutional level and could not do so. Thus, under the Agency rules, a grievance process was unavailable as to that matter.

### C. Failure to Specifically Name Warden Reddish

Defendant Reddish notes that he was not named in Daniels' direct grievance and so should be dismissed. An inmate's § 1983 actions were not automatically rendered noncompliant with PLRA exhaustion requirement by fact that not all defendants named in complaints had been named in previous administrative grievances. *Jones v. Bock*, 127 S.Ct. 910 (2007), abrogating *Burton v. Jones*, 321 F.3d 569. 379; *Brown v. Sikes*, 212 F.3d 1205, 1207-08 (11th Cir. 2000); *accord, Sanks v. Franklin*, 2010 WL 234785, *6 (M.D. Ga., Jan. 13, 2010) (question is whether plaintiff knew or reasonably should have known who was responsible" for the alleged deprivation"); *Nelson v. Madan*, 2005 WL 2416036, *2 (M.D.Fla., Sept. 30, 2005). *Robinson*

8

*v.Johnson*, 343 Fed.Appx. 778,781-82 (3dCir. 2009) (declining to dismiss claims against administrators not named in grievance).

One court has said that a strict name-the-defendant policy would require prison officials to make provision for discovery in the grievance process, or else the requirement would be invalid because in conflict with the federal policies underlying the civil rights statutes. *Freeman v. Berge*, 2004 WL 177 4 73 7, *3-4 (W.D.Wis., July 28, 2004); *accord, Czapiewski v. Bartow*, 2008 WL 2622862, *1-2 (W.D.Wis., July 1, 2008) (reiterating point after *Woodford v. Ngo* and *Jones v. Bock*). Plaintiff could additionally plead that the Warden would have known through institution reports, for example, that injuries of inmates rose significantly when the Administrative Lieutenant (Clark) received his promotion and took over his post and that Clark had a reputation on the compound for brutality.

The purpose of the exhaustion requirement is to give prison officials notice of problems, not to give notice of who will be sued. *Jones v. Bock*, 549 U.S. 199, 219, 127 S. Ct. 910 (2007). If defendants need additional information about the incident in order to address the problem, they can reject the grievance as not specific enough, or they can investigate the grievance and interview the complainant, as grievance rules generally provide.

### D. Improper to Dismiss this Case on this Rule 12(b)(6) Motion

Defendants produce as their Exhibit A what purports to be a grievance by Daniels filed directly with the Office of the Secretary of Corrections on April 30, 2012. The grievance states that it is a grievance of a sensitive nature and the subject is staff abuse. The grievance appears not to have been rejected by the Reviewing Authority but, rather, referred to the Office of the Inspector General, which was then investigating the incident.[3]

---

[3] Plaintiff can also plead that he has been informed by the Florida Department of Corrections that the investigation of the incident has been subsequently reopened.

The Florida Administrative Code (FAC) 33-103.007(6) permits emergency grievances (known in FDOC as "grievances of a sensitive nature"), among others to be filed directly with the Secretary of Corrections ("direct grievance"). The Bureau of Policy Management and Inmate Appeals is authorized by the Secretary to receive, review, investigate, evaluate, and respond to direct grievances. The Bureau is located in the Office of the General Counsel and is managed by the Chief of Policy Management and Inmate Appeals. FAC 33-103.002(2).

Direct grievances are responded to by the Bureau Chief, or designated staff who serve as the Secretary's representative ("Reviewing Authority"). FAC 33-103.002(15)(d)2. As a response, the Reviewing Authority may "approve, deny, or return the grievance and the reasons for approval, denial, or return. FAC 33-103.002(16). A grievance that is not granted or denied on the merits is returned to the filer without action. "A grievance may be returned to the inmate for any one or more of the reasons stated in Rule 33-103.014, F.A.C., without further processing." FAC 33-103.007(4). Among the reasons a grievance may be returned without processing is FAC 33-103.014(f), that there was no valid reason for by-passing the previous levels of review. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process. *Turner v. Burnside*. 541 F.3d 1077, 1082 (11th Cir. 2008).

> First, the court looks to the factual allegations in the defendant[s'] motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendant[s] bear the burden of proving the plaintiff has failed to exhaust his available administrative remedies.

*Id*. at 1082.

It is rare for exhaustion to be genuinely apparent on the face of the complaint since there are so many circumstances under which a prisoner might be deemed to have exhausted, or not required or able to exhaust remedies. To establish non-exhaustion, defendants have the burden to show what constitutes failure to exhaust and must show that any defects in exhaustion were not procured from the action or inaction of prison officials and that the prisoner is without valid excuse for non-exhaustion. *Lee v. Smith*, 2009 U.S. Dist. LEXIS 122846 (S.D. Ga. Dec. 2, 2009) (Defendants did not show that procedural flaws at the appeals stage constituted failure to exhaust remedies.); *Aquilar Avellaveda v. Terrell*, 478 F.3d 1223, 1225-26 (10th Cir. 2007) (To determine whether an inmate has exhausted his administrative remedies would require information from the defendant as well as the inmate); *accord, Meador v. Pleasant Valley State Prison*, 333 Fed.Appx. 177, 178 (9th Cir. 2009) (concession that grievance was untimely did not establish non-exhaustion, since the grievance rules allow late exhaustion under some circumstances and plaintiff alleged reasons he was unable to file timely). Courts have rejected the idea that non-exhaustion is apparent if you provide any information about exhaustion in your complaint, and it doesn't completely establish that you have exhausted. *See, e.g., Carson v. Monroe*, 2008 WL 822150, *4 (W.D.Mich., Mar. 26, 2008). (The fact that Plaintiff attaches grievances to his complaint or to other pleadings that may not show exhaustion of every issue presented is of no consequence, because Plaintiff has no duty to show exhaustion. The burden lies solely with a defendant to show that Plaintiff failed to exhaust grievance remedies.")

Establishing non-exhaustion requires three things:

(1) evidence that there actually was an available administrative remedy for the problem. *Farrell v. Hunter*, 2006 WL 4756454 *4 (M.D. Fla.)

(2) evidence that the Plaintiff was a prisoner, and therefore required to exhaust, when he filed his complaint. 508 42 U.S.C. 1997e(a).

(3) evidence that the Plaintiff didn't exhaust. Several courts have found prison officials' affidavits and documentation asserting that a prisoner didn't exhaust to be insufficient or even inadmissible into evidence because they were completely conclusory, *Ray v. Kertes,* 130 Fed.Appx. 541, 543 (3d Cir. 2005); failed to set out how records were searched, *Ortiz v. Kilquist*, 2006 WL 2583714, *2 (S.D.Ill., Aug. 3, 2006); rested on hearsay, *Donahue v. Bennett*, 2003 WL 21730698, *4 (W.D.N.Y., June 23, 2003); or otherwise failed to establish a failure to exhaust, *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003).

Defendants are far from having discharged their burden of proof as to exhaustion of administrative remedies and Plaintiff can, in any case, amend the Amended Complaint so far as necessary to maintain his action.

WHEREFORE, Daniels respectfully requests this Honorable Court DENY Defendants' Motions to Dismiss the Amended Complaint for Failure to Exhaust Administrative Remedies.

Respectfully Submitted,

*s/ James V. Cook*_____
JAMES V. COOK, ESQ.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, FL 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

<u>Attorney for Plaintiff</u>

I CERTIFY the foregoing was filed electronically on 12/28/15, and served the same date on counsel registered to be notified by the CM/ECF electronic mail system:

*s/James V. Cook*