UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


RONNIE DANIELS,

                    Plaintiff,

v.                                        Case No. 3:15-cv-719-J-34MCR

BARRY REDDISH,
et al.,
                    Defendants.
_____

**ORDER**

**I. Status**

        This matter is before the Court on Defendants Taylor, McCloud,
Clark, Bennett, Groves, and Eunice's Motion to Dismiss Plaintiff's
Amended Complaint (Defendants' Motion; Doc. 20) and Defendant Barry
Reddish's Motion to Quash Service and Dismiss Plaintiff's Amended
Complaint (Reddish's Motion; Doc. 21). Plaintiff filed his response
in opposition to the Motions on December 28, 2015. See Plaintiff's
Combined Response in Opposition to Defendants' Motions to Dismiss
the Amended Complaint (Response; Doc. 27); Notice of Filing Medical
Records (Doc. 34). Defendants' Motion and Reddish's Motion are ripe
for review.

**II. Amended Complaint for Damages**[1]

        In the Amended Complaint for Damages (Amended Complaint; Doc.
18), Plaintiff Ronnie Daniels names the following individuals as

_____

        [1] The Court's recitation of the facts will focus on only those
assertions that are relevant to the exhaustion issue.

Defendants: (1) Barry Reddish, the Warden of Union Correctional Institution (UCI); (2) Mark Taylor, a corrections trainee at UCI; (3) Sergeant Herbert McCloud; (4) Lieutenant Casey Clark; (5) Sergeant William Bennett; (6) Jay Groves, a UCI corrections officer; (7) Douglas Eunice, a UCI corrections officer; and (8) Nurse Jane Doe. Daniels asserts that the Defendants violated his federal constitutional rights under 42 U.S.C. § 1983. Specifically, he contends that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when: Taylor, McCloud, Clark, Bennett, Groves, and Eunice assaulted him on February 6, 2012, and failed to intervene to protect him while other officers abused him that day (count one); Clark, McCloud, and Bennett, as supervisors, participated in the alleged physical abuse that day, and failed to intervene and report the violations (count two); Nurse Jane Doe failed to "treat" Daniels' medical needs and injuries after the alleged assault (count four), see Amended Complaint at 15, ¶ 133; and Warden Reddish was deliberately indifferent to a known "serious risk of harm to [Daniels]" (count five), see id. at 16-17. Daniels also asserts that Defendants Taylor, McCloud, Clark, Bennett, Groves, and Eunice conspired to violate his federal constitutional rights when they: agreed not to report the alleged assault; coordinated "false stories on a fictitious assault on an officer by [Daniels]," (count three), id. at 14, ¶ 128; submitted erroneous written reports, in which they

2

coordinated inaccurate details; and wrote, corroborated or permitted a false disciplinary report so that Daniels would be punished in order for their flawed reports to seem credible.

### III. Summary of the Arguments

In Defendants' Motion, Defendants Taylor, McCloud, Clark, Bennett, Groves, and Eunice assert that dismissal of the Amended Complaint is warranted because Daniels failed to timely serve Defendants McCloud, Groves, and Eunice, and further failed to exhaust his administrative remedies. With regard to service of process, Defendants McCloud, Groves, and Eunice assert that Rule 4(m) of the Federal Rules of Civil Procedure required that Daniels serve them within 120 days after the filing of the Complaint for Damages (Complaint; Doc. 1). Because Daniels filed the Complaint on June 15, 2015, Defendants assert he was required to effect service of process no later than October 13, 2015.[2] They state that Daniels did not perfect service of process upon them until: October 20, 2015, for Defendants Eunice and Groves, and October 21, 2015, for Defendant McCloud. Therefore, Defendants McCloud, Groves, and Eunice argue that they should be dismissed from the lawsuit for Daniels' failure to timely perfect service upon them.

---

[2] Plaintiff, through counsel, filed the Complaint on June 15, 2015. At that time, the allowable time for serving a defendant was 120 days. The rule was amended in 2015, and reduced the time from 120 days to 90 days. See Fed. R. Civ. P. 4(m).

As to the issue of exhaustion, Defendants assert that Daniels' claims against them should be dismissed without prejudice because Daniels failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the 42 U.S.C. § 1983 lawsuit. In support of their Motion, Defendants submitted Daniels' April 30, 2012 grievance. See Def. Ex. A, Request for Administrative Remedy or Appeal, dated April 30, 2012. Defendants maintain that an "untimely, improper, and incomplete grievance," such as the grievance filed by Daniels on April 30, 2012, does not satisfy the exhaustion requirements of the PLRA. Defendants' Motion at 2. In particular, Defendants assert that Daniels' grievance was untimely submitted to the Office of the Secretary because it was dated April 30, 2012 (83 days after the abuse allegedly occurred), and the Office of the Secretary did not receive it until May 4, 2012 (87 days after the abuse allegedly occurred). See id. at 7. Additionally, Defendants contend that Daniels failed to identify specific acts of wrongdoing in his grievance that form the basis of his § 1983 claims as to: (a) Defendant Taylor in count one; (b) Defendants McCloud, Clark, and Bennett - claims in count two relating to them supervising the alleged abuse or failing to stop or report the alleged abuse; and (c) Defendants Taylor, McCloud, Clark, Bennett, Groves, and Eunice - conspiracy claim in count three.

4

In Reddish's Motion, Defendant Reddish makes similar assertions. He seeks dismissal, arguing that Daniels failed to timely serve him with process, and failed to exhaust available administrative remedies. With regard to service, he asserts that Daniels did not perfect service of process upon him until October 15, 2015, and maintains that Daniels has not demonstrated good cause for the delay. Next, with regard to exhaustion, Reddish states that Daniels did not grieve the issues underlying his claims against Reddish.

In response to Defendants' Motions, Daniels asserts that the Court resolved the issue relating to untimely service on December 9, 2015, the same day that the Defendants filed their Motions. See Response at 1, ¶ 3. As to exhaustion, Daniels opposes the Motions and asserts that: (1) he pled compliance with the exhaustion requirements of the PLRA, see id. at § 5; (2) the reviewing authority of the Florida Department of Corrections (FDOC) chose to treat Daniels' late grievance as timely filed and did not return the grievance, but instead forwarded it to the Office of the Inspector General, and formally denied relief for the stated reason that an investigation into the matter had already been initiated prior to the filing of the grievance, see id. at 4; (3) Daniels' grievance contained sufficient facts to alert the prison about the incident; see id. at 6-7; (4) Daniels "did not elaborate his medical complaint in the direct grievance" because a grievance of

a medical nature must be filed at the institutional level, and he "reasonably anticipated a threatened reprisal for filing that grievance at the institutional level and could not do so," and therefore the grievance process was "unavailable as to that matter," see id. at 8; and (5) it is improper for the Court to grant the Rule 12(b)(6) Motions and dismiss the case, see id. at 9-12, because "Defendants are far from having discharged their burden of proof as to exhaustion of administrative remedies" and Plaintiff can amend his Amended Complaint, if necessary to maintain the action, see id. at 12. Daniels also opposes Reddish's Motion and asserts that the Court should not find Daniels to be "noncompliant" with the PLRA exhaustion requirement merely because he failed to name Warden Reddish in the grievance. See id. at 8-9. Accordingly, Daniels requests that the Court deny Defendants and Reddish's Motions, or in the alternative, permit him leave to amend the operative complaint "so far as necessary to maintain his action." Id. at 12.

## IV. Service of Process

The Court extended the time for service to October 21, 2015, as to all of the Defendants. See Endorsed Order (Doc. 22), filed December 9, 2015; Endorsed Order (Doc. 24), filed December 16, 2015. Therefore, Defendants' Motion and Reddish's Motion with respect to any asserted untimely service upon the Defendants is due to be denied.

## V. Exhaustion of Administrative Remedies

Exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions may be initiated in this Court by a prisoner. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Daniels is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); Jones, 549 U.S. at 211; Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[3] 286 F.3d, at 1024. . . .

_____

[3] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

Id. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court recently emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant, 530 F.3d at 1374. The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[4] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes

---

[4] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

> specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082-83; <u>see</u> <u>also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015).

The FDOC provides an internal grievance procedure for its inmates. <u>See</u> FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the FDOC. <u>See</u> FLA. ADMIN. CODE r. 33-103.007.

However, under specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed directly to the Office of the Secretary of the FDOC by filing a "direct grievance." <u>See</u> FLA. ADMIN. CODE r. 33-103.007(6). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of

the Secretary. FLA. ADMIN. CODE r. 33-103.007(6). In a direct grievance to the Secretary, the inmate "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility . . . ." FLA. ADMIN. CODE r. 33-103.007(6)(a)2. If the Secretary determines that the grievance does not qualify as one of the types of direct grievances described in the rule, the grievance must be returned to the inmate, stating the reasons for its return and advising the inmate to resubmit the grievance at the appropriate level. See FLA. ADMIN. CODE r. 33-103.007(6)(d). If the grievance is returned to the institution or facility for further investigation or a response, the inmate may, after receiving the response, re-file with the Secretary if he is not satisfied with the response. See FLA. ADMIN. CODE r. 33-103.007(7).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Direct grievances to the Office of the Secretary "[m]ust be received within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred." FLA. ADMIN. CODE r. 33-103.011(1)(d). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more ... conditions are found to exist." FLA.

ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(x). Some of the reasons for returning a grievance are as follows: the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood"; the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or the "direct grievance to the Office of the Secretary was not received within 15 calendar days of the date that the incident or action being grieved occurred." See FLA. ADMIN. CODE r. 33-103.014(1)(a), (b), (c), (f), (h).

In the Amended Complaint, Daniels asserts that the Defendants physically abused him on February 6, 2012, while he was incarcerated at UCI. Also, he avers that he "fully exhausted" his claims through completion of the administrative grievance process, see Amended Complaint at 1, ¶ 4; 11, ¶ 110, and in doing so, he "managed to secure the relief that he requested - that the Department investigate the assault on him[,]" see id. at 11, ¶ 110. Nevertheless, Defendants maintain that the Court should dismiss the claims against them because Daniels failed to exhaust his administrative remedies, as required by the PLRA, before filing the

42 U.S.C. § 1983 lawsuit. In support of their argument, Defendants submitted Daniels' April 30, 2012 direct grievance, titled grievance of a sensitive nature: staff abuse.[5] See Def. Ex. A. First, Defendants assert that Daniels' grievance was untimely submitted to the Office of the Secretary because it was dated April 30, 2012, and the Office of the Secretary did not receive it until May 4, 2012, which was more than fifteen days after the alleged abuse on February 6, 2012.[6] See Defendants' Motion at 7.

In the grievance, Daniels described events "following a confrontation with a trainee."

> This should be construed as a grievance of a sensetive [sic] nature: Staff Abuse.
>
> On 2/6/12 at Union C.I., S.W.U. I was being escorted by a Lt. and 3 brown shirt C.O.'s to confinement following a confrontation with a trainee. We were met at gate one by the Admin. Lt.[7] The Admin. Lt. took a hold on my cuffed hands which were behind me and said "I'll teach you about

---

[5] The parties agree that Florida Administrative Code Rule 33-103.007(6) permits the filing of emergency grievances and grievances of reprisal, known in the FDOC as "grievances of a sensitive nature." See Response at 3; Defendants' Motion at 7-8.

[6] Florida Administrative Code Rule 33-103.011, titled "Time frames for Inmate Grievances," provides: "When determining the time frames for grievances in all cases, the specified time frame shall commence on the day following the date of the incident or response to the grievance at the previous level. For example, if an incident occurred on December 1, fifteen days from that date would be December 16."

[7] Daniels avers that the Administrative Lieutenant that he refers to in the grievance is Defendant Clark. See Response at 6; Amended Complaint at 4, ¶ 37.

hitting one of my Officers," and levered my cuffed hands until I was forced to bend fo[r]ward whereupon he brought his knee up into my left rib-cage. The other Lt. and the 3 Sgt's [8] began to hit me. In the next 80 yards the Admin. Lt. kneed me 10 times and the other 4 C.O.'s [9]hit me countless times.

Fortunately, there were two ambulances at the ICU and I was taken to Shands of Gain[e]sville D.O.A., where I was revived, stabilized and moved to Jax. Memorial. I suffered several broken ribs, both my lungs collapsed, and I was torn, bru[i]sed and battered from head to toe. My next of kin was called by the hospital[']s social worker and told that I was not expected to live.

In 1988 F.D.O.C. signed an ICC [(Interstate Compact)] contract stating that the Dept. would protect me from physical harm, yet on 2/6/12 it was C.O.'s that very nearly killed me. The only thing that will stop me from accepting my brother's offer to hire an attorney to sue F.D.O.C.'s Secretary and U.C.I.'s Warden is a transfer back to Ky. where I will be safe. Because of what happened at U.C.I. my life is in danger every minute I am in F.D.O.C.

Also, at Jax. Memorial[,] I was in a coma for over 4 weeks.

Def. Ex. A. On May 16, 2012, the FDOC responded to Daniels'

grievance, stating in pertinent part:

Your appeal has been reviewed and evaluated. The subject of your grievance is currently

---

[8] Daniels asserts that two of the sergeants that he references in the grievance are Defendants McCloud and Bennett. See Response at 6; Amended Complaint at 5, ¶¶ 45, 46.

[9] Daniels states that two of the corrections officers that he refers to in the grievance are Defendants Groves and Eunice. See Response at 6; Amended Complaint at 5, ¶¶ 45, 46.

being reviewed by the investigative section of the Office of the Inspector General. A copy of your complaint will be forwarded to that section to be included as a part of the current review. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

Any further correspondence regarding this issue should be directed to the Inspector General's Office.

As this process was initiated prior to the receipt of your grievance, your request for action by this office is denied.

Defendants' Ex. A, Part B - Response, dated May 16, 2012.

In his Response to Defendants' motions, Daniels explains that "the Reviewing Authority exercised its discretion to accept and process Plaintiff's grievance instead of returning it without action." Response at 4 n.1. This Court agrees. Daniels explained in the grievance that he had been hospitalized for four weeks as a result of injuries sustained in the confrontations and that he had ongoing concerns about retaliation by corrections officials. See Def. Ex. A. The FDOC "reviewed and evaluated" the grievance, and ultimately denied it because the investigative section of the Office of the Inspector General was in the process of reviewing the "subject" presented in Daniels' grievance. See id. Thus, the FDOC chose to process the grievance and not return it to Daniels as untimely filed. As such, the FDOC forwarded it to the Office of the Inspector General as a supplement to the investigation. Indeed, as Daniels notes, the FDOC ultimately granted the relief he requested

in that he was returned to Kentucky under the Interstate Compact. See Response at 4. Given these circumstances, this Court concludes that Defendants' requests to dismiss the case based on the untimeliness of Daniels' grievance are due to be denied.

Defendants also assert that Daniels failed to identify in his grievance the specific acts of wrongdoing that form the basis of his § 1983 claims as to: (1) Defendant Taylor in count one; (2) Defendants McCloud, Clark, and Bennett in count two; and (3) Defendants Taylor, McCloud, Clark, Bennett, Groves, and Eunice in count three. Also, Defendant Reddish asserts that Daniels did not file any grievances regarding his claims against Reddish. As to this issue, the United States Supreme Court has stated: "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. The FDOC rules provide that the inmate must include accurately stated facts, and the grievance will be returned if it is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to." FLA. ADMIN. CODE r. 33-103.007(2)(e); 33-103.014(1)(a).

In the Amended Complaint, Daniels asserts that Defendant Taylor, a corrections trainee, assaulted him on February 6, 2012, at UCI. See Amended Complaint at 3-4, ¶¶ 19-36. Daniels describes

15

the assault: "Suddenly, Taylor grabbed Daniels by his head and pulled him 10-15 feet and rammed his head into the wall outside the shower room." See id. at 4, ¶ 30. In the grievance, Daniels stated that he had "a confrontation with a trainee" prior to being escorted to confinement. See Def. Ex. A. Although he referenced "a confrontation with a trainee" (not yet identified as Defendant Taylor), Daniels did not state that the "trainee" struck or injured him. Indeed, he provided no information whatsoever about the "confrontation" or the trainee's actions. Instead, he focused on what transpired after the confrontation. Under these circumstances, Daniels failed to provide enough factual detail in his grievance to enable the FDOC to conduct a thorough investigation of the alleged acts of wrongdoing that he is asserting in the operative complaint against Defendant Taylor (i.e., grabbing Daniels's head and pulling him 10-15 feet and ramming his head into the wall). Additionally, Daniels failed to provide in the grievance as much relevant information as he reasonably could have provided. See Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hile § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that."). The Court finds that Daniels failed to provide any relevant information as to Taylor when it was reasonably available to him. Therefore, despite Daniels' allegation that he exhausted his administrative remedies as to Taylor, the

Court determines that in fact he did not do so. Defendant Taylor's request for his dismissal under count one is due to be granted.[10]

Next, Defendants McCloud, Clark, and Bennett assert that Daniels failed to properly exhaust certain claims (supervising the alleged abuse, failing to stop the alleged abuse, and failing to report the alleged abuse) under count two, and therefore seek dismissal of those claims against them. See Motion at 13. In the grievance, Daniels refers to an Administrative Lieutenant and three sergeants, see Def. Ex. A; he later identified the Administrative Lieutenant as Clark and two of the sergeants as McCloud and Bennett, see Amended Complaint at 13-14; see also Response at 6. The Eleventh Circuit has instructed that the failure to identify a particular defendant in a grievance is not fatal. Brown, 212 F.3d at 1208 (stating "a prisoner cannot provide that which he does not have; he cannot identify those whose identities are unknown to him"). Because Daniels' grievance provided sufficient "relevant information" relating to Defendants McCloud, Clark and Bennett for prison officials to identify the persons involved and investigate the incident, Defendants' request for the dismissal of the above-described claims under count two is due to be denied.[11]

_____

[10] The Court will dismiss Defendant Taylor from the action because Daniels failed to sufficiently exhaust claims against him under counts one and three.

[11] Notably, Daniels' grievance includes sufficient facts pertaining to their alleged participation in what the Court refers to as the second alleged assault that day. Daniels describes three

Defendants Taylor, McCloud, Clark, Bennett, Groves, and Eunice assert that Daniels failed to properly exhaust his conspiracy claim under count three,[12] and therefore seek dismissal of those claims. The Court finds that Daniels' grievance was insufficient to exhaust his administrative remedies with respect to his conspiracy claim against the Defendants because he neither included any facts relating to a conspiracy nor an agreement among the Defendants to violate his rights nor identified any wrongdoing that could form the basis for a conspiracy. Therefore, Defendants' request for the dismissal of the conspiracy claims under count three is due to be granted.

Defendant Reddish asserts that Daniels failed to properly exhaust his claims under count five, and therefore seeks his dismissal from the instant action. In the Amended Complaint, Daniels asserts that Defendant Reddish, as the UCI Warden, was deliberately indifferent to a known serious risk of harm to Daniels. See Amended Complaint at 16-17. The Court finds that

---

alleged assaults: Taylor assaulted him outside the shower room, see Amended Complaint at 4, ¶ 30; Clark, McCloud, Bennett, Groves, and Eunice assaulted him during an escort to confinement, see id. at 5-6, which is the subject of his grievance; and Clark, McCloud, Bennett, Groves, and Eunice beat him in the infirmary, see id. at 6,¶ 59.

[12] Daniels asserts that Defendants Taylor, McCloud, Clark, Bennett, Groves, and Eunice conspired to violate his federal constitutional rights when they: agreed not to report the alleged assault; coordinated false stories; submitted erroneous written reports with inaccurate details; and wrote a false disciplinary report. See Amended Complaint at 14-15.

Daniels' grievance was insufficient to exhaust his administrative remedies with respect to his claim against Defendant Reddish. In the grievance, Daniels neither included any facts relating to the Warden's knowledge of risk to him nor any suggestion that he participated in or supervised any wrongdoing that could form the basis for a claim against him. Indeed, the grievance contains no indication of wrongdoing by Warden Reddish. Therefore, Defendant Reddish's request for the dismissal of claims against him under count five is due to be granted, and the Court will dismiss Defendant Reddish from the instant action.

To the extent that Daniels, who is represented by counsel, seeks leave to amend the operative complaint as an alternative to a possible dismissal, see Response at 2-3, 12, the Court will deny the request without prejudice. Preliminarily, the Court notes that a request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion. See Fed. R. Civ. P. 7(b)(1); see also Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)). Additionally, Daniels has failed to comply with Rule 3.01(g), Local Rules, United States District Court, Middle District of Florida.

Moreover, even if it were proper to include a request for leave to amend in the Response, the request is otherwise due to be denied based upon Daniels' failure to satisfy the requirement that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." <u>Long v. Satz</u>, 181 F.3d 1275, 1279 (11th Cir. 1999); <u>see</u> <u>also</u> <u>McGinley v. Fla. Dep't of Highway Safety and Motor Vehicles</u>, 438 F. App'x 754, 757 (11th Cir. 2011) (affirming denial of leave to amend where plaintiff did not set forth the substance of the proposed amendment); <u>United States ex. rel. Atkins v. McInteer</u>, 470 F.3d 1350, 1361-62 (11th Cir. 2006) (same). Thus, to the extent Daniels' request in the Response is a request to amend the operative complaint, the Court will not entertain Daniels' request for relief included in the Response.

Therefore, it is now

**ORDERED:**

1.   Defendants Taylor, McCloud, Clark, Bennett, Groves, and Eunice's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 20) is **PARTIALLY GRANTED** for Plaintiff's failure to properly exhaust the prison's administrative remedies relating to his claims involving: (a) Defendant Taylor in count one, and (b) Taylor, McCloud, Clark, Bennett, Groves, and Eunice in count three (the conspiracy claims). The Motion is **DENIED** as to Daniels' claims (supervising the alleged abuse, failing to stop the alleged abuse,

and failing to report the alleged abuse) in count two against Defendants McCloud, Clark, and Bennett.

2. Defendant Barry Reddish's Motion to Quash Service and Dismiss Plaintiff's Amended Complaint (Doc. 21) is **PARTIALLY GRANTED** only to the extent that the Court will dismiss Defendant Reddish for Plaintiff's failure to exhaust his administrative remedies as to claims against Reddish.

3. Defendants' requests to dismiss (Docs. 20, 21) based on their assertions that Daniels failed to timely serve them and failed to submit a timely grievance are **DENIED**.

4. Defendants Barry Reddish and Mark Taylor are **DISMISSED without prejudice** from this action. Judgment to that effect will be withheld pending adjudication of the action as a whole. See Fed. R. Civ. P. 54.

5. To the extent that Plaintiff seeks leave to amend the operative complaint, the request is **DENIED** without prejudice.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of September, 2016.

**MARCIA MORALES HOWARD**
United States District Judge

sc 9/9
c:
Counsel of Record

21